IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KRISTEE R. NASH,

Plaintiff,

vs.

DOUGLAS COUNTY NEBRASKA,

Defendant.

8:25CV384

MEMORANDUM AND ORDER

Plaintiff filed a Complaint on June 9, 2025, Filing No. 1, and what the Court construes as a motion for summons, Filing No. 3. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 6. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) and will consider Plaintiff's pending motion.

## I. SUMMARY OF COMPLAINT

Plaintiff filed this action against Douglas County, Nebraska ("Defendant"), alleging employment discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 to 12117; 42 U.S.C. § 12182. Filing No. 1 at 3–4. Plaintiff received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on March 10, 2025, *Id*. at 5, and timely filed her Complaint within 90 days of receipt pursuant to 42 U.S.C. § 2000e-5(f)(1).

Plaintiff is employed at the Douglas County Health Center ("DCHC") and alleges she was subjected to unequal terms and conditions of her employment and retaliation based on her race and disability, namely diabetes and a "blindness eye disorder,"

continually between July 2020 and May 2024. *Id*. at 4 (capitalization omitted). Plaintiff does not allege any facts in support of her claims in the space provided in her form Complaint for Employment Discrimination. *See Id*. at 4–5. However, Plaintiff attached to her Complaint a copy of the June 17, 2024, charge of discrimination she filed with the Equal Employment Opportunity Commission ("EEOC"), *Id*. at 8–10, from which the Court takes the following facts.[1]

Plaintiff is black, has "disabilities and a record of disabilities," and previously filed a charge of disability discrimination against Defendant on January 23, 2023. *Id*. at 8. Plaintiff has worked for Defendant since July 2020, most recently as a Nursing Assistant. Throughout Plaintiff's employment, residents of the DCHC "would frequently use the N-word in the facility, in some instances directed directly at [Plaintiff]." *Id*. Plaintiff "would regularly report it to Assistant DON Judy Delgado (white, NKD-No known disability), Nurse Managers Cheryl Casson (white, NKD) and Melody Christianson (white, known disability), the Charge Nurses, HR, and Commissioner Chris Rodgers (black, NKD)," but the instances were rarely documented and "[t]he response was always something to the effect that this is a behavioral issue with the residents and that they have dementia and there is nothing that could be done." *Id*.

In January 2023, Plaintiff "requested an iPad as part of [her] reasonable accommodations," which was provided to her but the iPads "regularly did not work." *Id*. Plaintiff regularly complained "that this did not serve as a reasonable accommodation due to the lack of their effectiveness," and, in March 2024, Plaintiff requested access to

---

[1] *See* Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 732 (8th Cir. 2015) (when determining whether a complaint states a plausible claim for relief, a court may consider material attached to the complaint).

a laptop from "Compliance Susan LNUK-Last Name Unknown (white, NKD)," but she was "never provided with a laptop as a reasonable accommodation." *Id*.

On or around September 6, 2023, Plaintiff received a 3-day suspension in her disciplinary file stemming from an incident in which "a resident call[ed] [Plaintiff] the N-word, and an allegation that [Plaintiff] called the resident a retarded motherfucker, which [Plaintiff] denied doing." *Id*. at 9. Defendant required Plaintiff to work on a different floor during these three days due to being short staffed. *Id*.

On or around April 15, 2024, Plaintiff "was suspended until [May 9, 2024,] for allegedly being aggressive and harassing towards Nursing Assistant Raja LNUK (black, NKD), which [Plaintiff] denied." *Id*. Upon her return to work, Plaintiff's "suspension was downgraded to a written reprimand and [she] was paid for [her] time suspended." *Id*. Plaintiff alleges her "performance has been and remains satisfactory." *Id*.

Based on these allegations, Plaintiff seeks $200,000 in damages for the "retaliatory treatment endured by [Plaintiff] that still persists," and for "[w]orking under duress and humiliation, defamation of character, [and] violation of [her] disability and confidentiality." *Id*. at 6 (spelling corrected).

The Court notes that, in addition to her Complaint, Plaintiff filed four supplements (the "Supplements") between September 22, 2025, to January 26, 2026, totaling 213 pages and consisting of various medical records, documents, and correspondence related to Plaintiff's previous charge of discrimination and a later-filed charge of discrimination, worker's compensation claims, requests for Family and Medical Leave, and her employment at the DCHC. Filing Nos. 7, 8, 9, and 10. While the Court has reviewed Plaintiff's Supplements along with her Complaint, the Court cannot discern

3

any additional relevant factual allegations from the multitude of documents in Plaintiff's Supplements, which were provided without any explanation or factual context.[2]

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal

---

[2] Moreover, to the extent the documents in Plaintiff's Supplements relate to events or charges of discrimination occurring after and not contained within the June 17, 2024, charge of discrimination that is the subject of her present Complaint, the Court cannot consider such facts as Plaintiff's action is limited to the claims raised in the June 17, 2024, charge of discrimination considered by the EEOC.  *See Voss v. Hous. Auth. of the City of Magnolia*, 917 F.3d 618, 623 (8th Cir. 2019) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice that must be individually addressed before the EEOC." (internal quotation marks and emphasis omitted)).

quotation marks and citations omitted).  This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004).  However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

Here, Plaintiff raises employment discrimination claims.  A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in his or her complaint.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by Twombly*, 550 U.S. at 570. However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

### III.  ANALYSIS

Liberally construed, Plaintiff alleges she was harassed, retaliated against, and discriminated against based on her race and disability in violation of Title VII and the ADA.  *See* Filing No. 1 at 8.  For the reasons that follow, Plaintiff's Complaint fails to state a claim under either Title VII or the ADA upon which relief may be granted, but the Court will grant Plaintiff leave to file an amended complaint.

### A.  Race Discrimination and Harassment (Title VII)

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "A prima facie case of discrimination requires that the plaintiff '(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination.'"  *Schaffhauser v. United Parcel Serv., Inc*., 794 F.3d 899, 903 (8th Cir. 2015) (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)).

Here, Plaintiff alleges she is black—a protected class—and her performance was satisfactory.  Regarding the third element, "[a]n adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment."  *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (citing *Muldrow v. St. Louis*, 601 U.S. 346, 354 (2024)).  Plaintiff must "plead 'some harm respecting an identifiable term or condition of employment.'"  *Id*. (quoting *Muldrow*, 601

6

U.S. at 355). Liberally construed, Plaintiff alleges she was subjected to discipline because of her race. *See* Filing No. 1 at 8 ("Due to my race, . . . I was disciplined."). Generally, however, "poor performance evaluations or disciplinary citations do not in themselves constitute an adverse employment action." *Seals v. Corr. Med. Servs., Inc.,* 473 F. Supp. 2d 912, 920 (E.D. Ark. 2007) (citing *Spears v. Mo. Dep't of Corrs. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000)). Neither the September 2023 3-day suspension nor the April 2024 suspension that was downgraded to a written reprimand described by Plaintiff in her charge of discrimination suggest that she suffered a disadvantageous change to her compensation, terms, condition, or privileges of her employment. Nor do the facts Plaintiff alleges suggest that the discipline was imposed because of her race; rather, the allegations merely suggest that Plaintiff was disciplined for alleged misconduct towards a resident and another staff member, which Plaintiff disputed. Plaintiff, thus, fails to allege facts suggesting a plausible race discrimination claim based on the discipline she received.

Liberally construed, Plaintiff also sues Defendant alleging a hostile work environment harassment claim based on Plaintiff's race under Title VII. "Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) (internal quotation marks and citation omitted), *abrogation on other grounds recognized by Cole*, 105 F.4th at 1114 n.1. To succeed on such a claim under Title VII, Plaintiff must establish that "(1) she is a member of a protected class; (2) unwelcome

7

harassment occurred; (3) there is a causal nexus between the harassment and her protected-group status; (4) the harassment affected a term, condition, or privilege of her employment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt and effective remedial action." *Id.* at 805–06 (internal quotation marks and citation omitted). "To determine whether the harassment affected a term, condition, or privilege of [Plaintiff's] employment, we must consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [Plaintiff's] job performance." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 922 (8th Cir. 2018) (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015)) (internal quotation marks and alterations omitted).

Here, Plaintiff alleges that residents of the DCHC "would frequently use the N-word" approximately twice every one to two weeks and would sometimes direct the racial slur at Plaintiff or towards other employees. Filing No. 1 at 8. Plaintiff regularly reported these incidents to her superiors who would rarely document the incidents and expressed that nothing could be done. Liberally construed, Plaintiff has alleged facts suggesting harassment based on her race.

While Plaintiff has alleged a link between the harassment she experienced and her race, the Complaint's allegations fail to suggest conduct that is severe enough to support a hostile work environment harassment claim. Conduct affecting a term, condition, or privilege of employment "requires that '[t]he harassment . . . be severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered.'" *Moses*, 894

F.3d at 922 (quoting *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009)) (internal quotation marks omitted). "The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Jackman*, 728 F.3d at 806 (internal quotation marks and citation omitted). "[M]erely rude or unpleasant conduct are insufficient to affect the terms and conditions of employment." *Moses*, 894 F.3d at 922–23 (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010)) (internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*. at 923 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted).

The residents' conduct of which Plaintiff complains is certainly offensive and inappropriate, but the facts alleged fail to suggest the kind of severe and pervasive conduct required to support a hostile environment claim under Eighth Circuit precedent. *See Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004) (finding racial remarks made directly to plaintiff once a month for two years by owner and operators was insufficient to render workplace objectively hostile). Moreover, while Plaintiff was understandably upset by the residents' remarks, Plaintiff's allegations indicate that the residents suffer from dementia or other potential cognitive impairments that require their placement in the DCHC, which would necessarily limit Defendant's ability to take action against the residents with respect to Plaintiff's complaints. *See*

Filing No. 1 at 8. Based on the facts alleged, Plaintiff's Complaint fails to state a plausible hostile work environment harassment claim under Title VII.

## B. Disability Discrimination and Failure to Accommodate (ADA)

Plaintiff also alleges she was discriminated against based on her disabilities or record of disabilities. As set forth in the ADA:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

An employee seeking relief under the ADA for discrimination must establish that: 1) he has a disability as defined in 42 U.S.C. § 12102(2); 2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and 3) he has suffered an adverse employment action because of his disability. *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). A person is disabled within the meaning of the ADA only if he demonstrates that he has a physical or mental impairment which substantially limits one or more of his major life activities, that he has a record of such an impairment, or that he is regarded as having such an impairment. *Amir v. St. Louis University*, 184 F.3d 1017, 1027 (8th Cir. 1999). "Major life activities under the ADA are basic activities that the average person can perform with little or no difficulty, including 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 861 (8th Cir. 2006) (quoting 29 C.F.R. § 1630.2(i)).

10

Although no facts are alleged in the Complaint to show that Plaintiff's diabetes and "blindness eye disorder" is a "disability," Plaintiff stated in the charge of discrimination she filed with the EEOC that she has "disabilities and a record of disabilities." Filing No. 1 at 8. This is sufficient under federal pleading practice. *See Trimble v. BNSF Ry. Co.*, No. 4:08CV3116, 2008 WL 2795863, at *3 (D. Neb. July 17, 2008) (denying defendant's motion for judgment on the pleadings based on ADA plaintiff's failure to allege what physical or mental impairment defendant regarded him as possessing and which major life activities were substantially limited); *EEOC v. Northwest Airlines, Inc.*, 216 F.Supp.2d 935, 939 (D. Minn. 2002) (noting that four circuit courts have ruled that an ADA plaintiff, at the pleading stage, is not required to explicitly assert a substantially limited major life activity); *see also Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364–65 (8th Cir. 2003) (citing *Northwest Airlines* with approval).

However, Plaintiff has not sufficiently alleged that she is a "qualified individual." "To be a qualified individual within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for h[er] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation. *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018) (internal quotation marks and citation omitted). While Plaintiff alleges her job performance was satisfactory, she does not allege any facts to show that she could perform the essential functions of the position.

Additionally, as with her Title VII discrimination claim, Plaintiff fails to allege facts suggesting that she suffered an adverse employment action. Liberally construed, Plaintiff alleges she was subjected to discipline because of her disabilities and record of

11

disabilities.  *See* Filing No. 1 at 8.  However, the circumstances of Plaintiff's suspensions and written reprimand do not suggest an adverse employment action for purposes of the ADA.  *See* Seals*, 473 F. Supp. 2d at 920* ("Generally, poor performance evaluations or disciplinary citations do not in themselves constitute an adverse employment action.") (citing Spears*, 210 F.3d at 854*).  Moreover, nothing Plaintiff alleges in her Complaint suggests that the discipline was imposed because of her disability.  Plaintiff's Complaint, thus, fails to state a plausible disability discrimination claim based on her disciplinary actions.

Liberally construed, Plaintiff also claims Defendant failed to accommodate her disabilities by providing ineffective iPads and denying her request for a laptop.  Filing No. 1 at 8.  To state a failure-to-accommodate claim, a plaintiff first "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015).  "The plaintiff then has the burden to show 'that the requested accommodation is reasonable on its face, i.e., ordinarily or in the run of cases.'" *Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1061 (W.D. Ark. 2017) (quoting *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004) (internal quotation marks omitted)).

An employer is not obligated to provide an employee the accommodation he or she requests or prefers.  *See, e.g.,* Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1019 (8th Cir. 2000).  *See also* Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010)* (defendants were not required to employ plaintiff in team leader position, even if he could maintain better control of his diabetes in that position).  The employer need only provide some reasonable accommodation.  *Hennenfent v. Mid Dakota Clinic, P.C.,*

164 F.3d 419, 422 n.2 (8th Cir. 1998); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1137 (8th Cir. 1999) ("If more than one accommodation would allow the individual to perform the essential functions of the position, 'the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.'").

As stated above, Plaintiff has not pleaded sufficient facts to establish a prima facie case of discrimination. Moreover, given the lack of facts about the nature of Plaintiff's disability and her employment at the DCHC, the Court cannot discern whether Defendant's failure to provide Plaintiff with a laptop was unreasonable or prevented Plaintiff from performing the essential functions of her position. As alleged, the Court cannot reasonably infer that Defendant failed to accommodate Plaintiff's disability in violation of the ADA.

## C. Retaliation (Title VII and ADA)

Lastly, Plaintiff alleges she was denied a reasonable accommodation and disciplined in retaliation for her complaints of racial and disability discrimination. *See* Filing No. 1 at 8. The ADA and Title VII both prohibit retaliation. 42 U.S.C. § 12203(a) (prohibiting discrimination (i.e., retaliation) because an individual "has opposed any act or practice made unlawful by" the ADA or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA); 42 U.S.C. § 2000e-3(a) (prohibiting discrimination (i.e., retaliation) because an employee or applicant "has opposed any practice made an unlawful employment

13

practice by" Title VII or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII).

To establish a prima facie case of retaliation under these acts, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016) (internal quotation omitted) (Title VII); *Moses*, 894 F.3d at 924 (ADA).

Liberally construed, Plaintiff alleges that, because she filed a previous charge of disability discrimination against Defendant on January 23, 2023, Defendant denied her a reasonable accommodation for her disability by denying her March 2024 request for a laptop to replace the allegedly ineffective iPads Defendant began providing in or around January 2023 as an accommodation. Filing No. 1 at 8. Filing a charge of discrimination is a protected activity, *see* 42 U.S.C. § 12203(a), and "[a]n employer is also liable for committing an adverse employment action if the employee in need of assistance actually requested but was denied a reasonable accommodation," *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016) (citing *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 675 (8th Cir. 2001)). However, Plaintiff has failed to allege any facts to support a causal connection between her January 23, 2023, charge of discrimination and Defendant's denial over a year later of Plaintiff's request for a laptop as an alternative accommodation to the ineffective iPads. *See Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014) (temporal proximity between protected conduct and adverse action must be "very close" for timing alone to support finding of causation for retaliation under

14

ADA).  Thus, Plaintiff has failed to state a plausible retaliation claim under the ADA based on her filing of a previous charge of discrimination.

Plaintiff also alleges that she was disciplined in retaliation for her race-based harassment complaints and her requests for accommodation for her disabilities.  Filing No. 1 at 8.  Requesting an accommodation may be considered a protected activity under the ADA.  *See Hill v. Walker*, 737 F.3d 1209, 1219 (8th Cir. 2013).  For purposes of this initial review, the Court also assumes Plaintiff's complaints to several of her superiors regarding the race-based harassment of herself and other employees by DCHC residents constitute protected activity.  *See Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 714 (8th Cir. 2000) (Title VII's prohibition against retaliation is not limited to protection of employees who file suit; it "protects activities ranging from filing a complaint to expressing a belief that the employer has engaged in discriminatory practices").  Plaintiff, however, has not alleged facts to suggest that the discipline she received constituted an adverse employment action as she does not plead that she suffered a disadvantageous change to her compensation, terms, conditions, or privileges of employment as a result of her 2023 suspension or her 2024 written reprimand.  *See Wagner v. Campbell*, 779 F.3d 761, 767 (8th Cir. 2015) ("A reprimand is an adverse employment action only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse.  When a reprimand does not affect the terms and conditions of a plaintiff's employment, she cannot make out a prima facie case of retaliation." (internal quotations and citations omitted)).  As a result, Plaintiff has failed to state a plausible retaliation claim under either Title VII based on her harassment complaints or the ADA based on her request for an accommodation.

15

**D.  Leave to Amend**

In its current state, Plaintiff's Complaint fails to state a claim upon which relief may be granted and is subject to pre-service dismissal.  The Court, however, shall grant Plaintiff leave to file an amended complaint to allege sufficient facts to state plausible claims for relief under Title VII and the ADA.  If Plaintiff chooses to file an amended complaint, she must comply with federal pleading rules and keep the following principles in mind.

Although courts construe pro se pleadings liberally, pro se litigants, like all other parties, must abide by the Federal Rules of Civil Procedure.  *See, e.g., Williams v. Harmon*, 294 F. App'x 243, 245 (8th Cir. 2008) (affirming dismissal where pro se litigant failed to comply with the Federal Rules of Civil Procedure).  Federal Rule of Civil Procedure 8 requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). A complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

The primary purpose of Rule 8 is to allow the Court and an opposing party to understand whether a valid claim is alleged and, if so, what it is; the complaint must be sufficiently clear so the Court or an opposing party is not required to keep sifting through it in search of what it is plaintiff asserts. *Cody v. Loen*, 468 F. App'x 644, 645 (8th Cir. 2012) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir. 1994)).  "A litigant cannot ignore her burden of developed pleading and expect the

16

district court to ferret out small needles from diffuse haystacks." *Murillo v. Kittelson*, No. 8:19CV571, 2020 WL 3250231, at *3 (D. Neb. June 16, 2020) (quoting *United States v. Slade*, 980 F.2d 27, 31 (1st Cir. 1992)).

Here, Plaintiff's Complaint and Supplements do not contain a "short and plain statement" of her claims nor is each claim "simple, concise, and direct."  Rather, the Court had to try and parse out Plaintiff's claims and factual allegations from the charge of discrimination attached to her Complaint.  And, while Plaintiff may have intended to raise additional claims or provide additional factual support for her claims by filing her Supplements, it is not the Court's job to weed through hundreds of pages of documents to discern what claims or facts Plaintiff is attempting to raise.  Thus, if Plaintiff files an amended complaint, she must clearly state her legal claims and the facts supporting each claim against Defendant in a clear, concise manner that provides fair notice of the claim and the grounds upon which it rests.

### IV.  PENDING MOTION FOR SUMMONS

With her Complaint, Plaintiff filed a form summons, which the Court construes as a motion for summons.  Filing No. 3.  "Rule 4 requires plaintiffs to serve each defendant with a summons and a copy of the complaint.  But district courts cannot issue summonses in *in forma pauperis* [non-prisoner and] prisoner cases until after screening the complaint for frivolousness and other defects under 28 U.S.C. §§ 1915(e) and 1915A(b)."  *See Welch v. Byrd*, No. 4:23CV3186, 2024 WL 3292696, at *1 (D. Neb. July 3, 2024) (quoting *Jackson v. Herrington*, 393 F. App'x 348, 353 (6th Cir. 2010) (internal citation omitted)).  The Court has reviewed Plaintiff's Complaint and determined that it fails to state a claim for relief and cannot proceed without amendment.  As such, the

Court will not issue summons in this case at this time and will deny Plaintiff's motion for summons without prejudice as premature.

## V.  CONCLUSION

Plaintiff's Complaint fails to state a claim under Title VII and the ADA upon which relief may be granted and is subject to dismissal under 28 U.S.C. § 1915(e)(2). However, on the Court's own motion, Plaintiff will be given 30 days in which to file an amended complaint alleging sufficient facts to state a plausible claim for relief against Defendant under Title VII and/or the ADA if such allegations can be truthfully and plausibly alleged.  In amending her Complaint, Plaintiff should restate any relevant allegations from her original Complaint, including those alleged in her charge of discrimination, and any new allegations and include all of the claims she wishes to pursue against Defendant *in one document*.  Plaintiff is warned that any amended complaint she files will replace her original Complaint and Supplements.  *E.g.*, *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).  Plaintiff is encouraged to use the court-approved form to draft her amended complaint, which the Clerk of the Court will provide to her.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice.  The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after she addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1.      Plaintiff shall have until **March 30, 2026**, to file an amended complaint in accordance with this Memorandum and Order.  Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

2.      In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations.  Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, her prior pleadings.

3.      The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event she files an amended complaint.

4.      The Clerk of Court is directed to send to Plaintiff the Form Pro Se 7 Complaint for Employment Discrimination.

5.      The Clerk of Court is directed to set a pro se case management deadline using the following text: **March 30, 2026**: amended complaint due.

6.      Plaintiff's motion for summons, Filing No. 3, is denied without prejudice to reassertion.


Dated this 26th day of February, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

19